UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WILLIAM J. WEBSTER, JOE DUEPNER, and ANDREW DOLLARD, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF NOBLESVILLE,<br>NOBLESVILLE POLICE DEPARTMENT,<br>KEVIN JOWITT, Chief of Police, in his official capacity,<br>JOHN DITSLEAR, Mayor of Noblesville, in his official capacity, and<br>COMMON COUNCIL OF THE CITY OF NOBLESVILLE,<br><br>Defendants. | Case No. 1:18-cv-01132-TWP-DLP |

## ENTRY DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

This matter is before the Court on a Motion for Class Certification filed by Plaintiffs William J. Webster ("Webster"), Joe Duepner ("Duepner"), and Andrew Dollard ("Dollard") (collectively, "Plaintiffs"). (Filing No. 54.) Defendants in this case are the City of Noblesville ("Noblesville"); Noblesville Police Department; Kevin Jowitt, Chief of Police, in his official capacity; John Ditslear, Mayor of Noblesville, in his official capacity; and the Common Council of the City of Noblesville (collectively, "Defendants"). The Plaintiffs filed this action alleging the Defendants violated their state and federal rights to due process by enforcing a city ordinance that allowed Noblesville police officers to issue parking tickets but did not provide a means for the recipients to contest those tickets. Plaintiffs seek to certify a class consisting of all persons who received a notice of parking violation in Noblesville and paid a fine as a result since 1989. For the reasons stated below, Plaintiffs' Motion to Certify Class is **denied**.

I. **BACKGROUND**

A. **Noblesville Traffic Code**

In 1989, the town of Noblesville, Indiana enacted Ordinance No. 65-7-89 ("the Ordinance"), the purpose of which was "regulating traffic upon the public streets and alleys of [Noblesville] ….". ([Filing No. 55-1](#).) The Ordinance announced how citizens could lawfully "stop, stand, or park a vehicle." *Id.* at 14. The Ordinance also described how citizens would be notified of parking violations (via a notice placed on the offending vehicle) and how those violations would be penalized (a $10.00 fine if paid within one week) . *Id.* at 19-20.

The traffic regulations originally promulgated by the Ordinance were later codified as the Noblesville Traffic Code ("NTC"), which currently regulates parking in Noblesville. Noblesville Code of Ordinances, Title VII, Chapters 70-78.[1] Since 1989, the laws governing parking in Noblesville have changed. For example, the NTC now includes a schedule of fines, increasing each week until the parking ticket is paid.[2] *Id.* at § 70.99(A). The NCT also empowers Noblesville to attach a "boot" to a car after the owner accumulates enough parking violations, rendering the car immobile until the owner pays his prior fines and a fee to remove the boot. *Id.* at § 70.99(A)(3). However, it was not until May 23, 2018, that Noblesville amended the NTC to establish a procedure by which an individual can appeal a parking violation and associated fines. ([Filing No. 55-2](#).) Before that date, there was no formal way for a person to challenge a parking violation charged in Noblesville. Between August 17, 1989 and May 23, 2018, Noblesville handed out thousands of parking tickets, none of which were appealable.

---

[1] The Noblesville Code of Ordinances can be found at:
http://library.amlegal.com/nxt/gateway.dll/Indiana/noblesville/cityofnoblesvilleindianacodeofordinances?f=templates$fn=default.htm$3.0$vid=amlegal:noblesville_in_mc

[2] Violators of the parking code owe a fine of $20 dollars, but if that fine goes unpaid after 7 days, the fine rises to $30, after 14 days it rises to $50, and so on.

## B. The Proposed Class

Plaintiffs allege the prior lack of appeals process violates the due process clauses of the United States Constitution and the Indiana Constitution. They seek to certify the following class under Federal Rule of Civil Procedure 23:

> All those who received a notice of parking violation in the City of Noblesville between August 17, 1989 and May 23, 2018 and, as a result of their receipt of said notice, paid any monetary fines (the fine for an alleged parking violation, late fees, wheel boot fees, towing fees, and/or storage costs) and/or were deprived of the use of their vehicle due to the application of a wheel boot or seizure by towing.

([Filing No. 54](#).) Plaintiffs also move to be appointed as Representatives of the Class and to have their counsel, Wagner Reese, LLP, appointed as Class Counsel. *Id.*

## C. The Plaintiffs

The three Plaintiffs are attorneys working in Hamilton County, Indiana who have received notice of parking violations from Noblesville dating back at least 22 years. During work hours, Plaintiffs often used two-hour street parking and attempted to move their cars every two hours before Noblesville ticketed them. ([Filing No. 67-1 at 3-5](#); [Filing No. 67-3 at 21](#).) This strategy resulted in many parking tickets, often for "overtime" parking, ([Filing No. 67-8](#)), but sometimes for other reasons such as "improper parking to curb." ([Filing No. 67-4](#).) The Court will detail each Plaintiff's parking history individually.

### 1. Plaintiff Andrew Dollard

Dollard estimates that he has received hundreds of parking tickets over the last 22 years. ([Filing No. 67-1 at 6](#).) He had no need to dispute roughly 98% of these tickets because he admits that he violated parking laws. *Id.* at 7. Dollard estimates that nine out of every ten tickets he received was for parking in a two-hour spot for longer than two hours. *Id.* at 10. On at least two occasions, Dollard took his parking tickets to the former City Court judge in Noblesville, explained

that the tickets were frivolous, and was told by the judge not to worry about paying the tickets. *Id.* at 8. He also, fewer than ten times, took his tickets to the Noblesville Police Department to complain about them. *Id.* at 9. The Noblesville Police Department never voided his tickets, but officers would hear him out and would allow him to speak with the parking enforcement officer who issued the ticket if he or she was available. *Id.* at 11-12.

One ticket Dollard received, for "improper parking to curb" on March 7, 2018, is attached to Plaintiffs' Complaint. ([Filing No. 1-2 at 80](Filing No. 1-2 at 80).) The ticket was placed on the Black Mercedes that Dollard was driving, but Dollard is not the registered owner of that Mercedes. ([Filing No. 67-5](Filing No. 67-5).) Dollard believed he was within a foot of the curb[3] and testified at his deposition that he would have challenged the ticket if there had been a formal way to do so. ([Filing No. 67-1 at 27](Filing No. 67-1 at 27).) At the time of his deposition, Dollard had not paid the fine associated with this ticket. *Id.* More recently, Dollard received a ticket after parking his father's truck in downtown Noblesville. *Id.* at 31-32. He did not believe, at the time of his deposition, that the ticket had been paid or that Noblesville attempted to collect the associated fine. *Id.*

### 2.  **Plaintiff Joe Duepner**

Like Dollard, Duepner is an attorney who works in downtown Noblesville and frequently uses two-hour street parking during the workday. Duepner estimated he has received approximately 50 parking tickets in Noblesville. ([Filing No. 67-3 at 7](Filing No. 67-3 at 7).) Also like Dollard, he has received many tickets which he did not contest if there were a process to do so. *Id.* at 9. Duepner twice attempted to dispute a parking ticket by talking to the Noblesville Police Department. *Id.* at 12. In both cases the parking enforcement officer listened to his defense to the ticket but nevertheless told him he needed to pay the fine. *Id.* Four of Duepner's tickets are attached to the

---

[3] Ind. Code § 9-21-16-7 requires drivers parking parallel to the curb to be "parked with the right-hand wheels of the vehicle parallel with and within twelve (12) inches of the right-hand curb."

4

Complaint.  (Filing No. 1-2 at 76-79.)  All four were issued for "overtime" parking between February and September of 2016.  *Id.*

### 3. Plaintiff William Webster

Vehicles registered to Webster are associated with a least 37 parking tickets issued by Noblesville since October 2014.  (Filing No. 67-7; Filing No. 67-6 at 3.)  Some of these tickets would not have been worth his time to contest, were there a means to do so, but other tickets he would have challenged.  (Filing No. 67-2 at 8.)  Webster testified at his deposition that he has attempted to dispute some tickets with the Noblesville Police Department but could not recall which specific tickets. *Id.* at 9.  Five of his tickets are attached to the Complaint.  (Filing No. 1-2 at 71-75.)  Four tickets are for "overtime" parking and the fifth is for an expired meter.  Webster could not recall any specific grounds he would have had for disputing these five tickets, were there a way to do so.  (Filing No. 67-2 at 10-24.)

Webster testified at his deposition that a parking restraint device, or "boot" was attached to his truck on January 18, 2017.  *Id.* at 29.  An immobilization notice was attached to his truck which indicated that he had unpaid parking tickets.  *Id.* at 30-31.  Webster testified that he was about to leave for an appointment with a potential client but, as a result of the booting, he had to miss that meeting.  *Id.* at 32-33.  He testified that he believes the client ended up hiring a different attorney.  *Id.* at 34-35.  Between March 23, 2016 and March 23, 2018, a total of 15 parking boots were applied by the Noblesville Police Department to vehicles in Noblesville, and 12 citizens (including Webster) paid for removal of the 14 boots.  (Filing No. 67-6.)

### D. The Defendants

The Defendants are all people or governmental bodies that have some connection to writing, enacting, or enforcing the NTC.  Defendant Common Council of the City of Noblesville

("the Council") was responsible for adopting ordinances governing Noblesville, including those regulating vehicular parking. Noblesville Code of Ordinances § 32.01. The Council created Noblesville's Traffic Commission—which included Defendant Mayor John Ditslear—and charged it with a duty to "recommend to the [Council] and to the traffic engineer, the chief of the traffic division and other city officials ways and means for improving traffic conditions and the administration and enforcement of traffic regulations." *Id.* at §§ 35.17-35.18. The Council required that "prior to … adoption of an ordinance concerning traffic control by the City Council," Noblesville's Traffic Committee was to submit a "report, study, investigation, and recommendation to the responsible body." *Id.* at § 70.18. The NTC required Noblesville's Police Chief and Police Officers to "enforce the street traffic regulations of [Noblesville]; … to direct other officers of [Noblesville] in the administration of traffic laws; … and to carry out those duties specifically imposed upon said office by [the NTC]." *Id.* at § 70.16.

## II. **LEGAL STANDARD**

To certify a plaintiff class under Federal Rule of Civil Procedure 23, the Plaintiffs must first satisfy all four elements of Rule 23(a) by demonstrating that: (1) the class is too numerous to join all members; (2) there are questions of law or fact common to the class; (3) the claims or defenses of representative parties are typical of those of the class members; and (4) the representative parties will fairly and adequately represent the class. As the Seventh Circuit has noted, plaintiffs must satisfy the trial court, "after a rigorous analysis," that the prerequisites of Rule 23(a) have been satisfied. *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003) (quoting *General Tel. Co. of S.W. v. Falcon*, 475 U.S. 147, 160-61 (1982)). If these requirements are met, plaintiffs must also satisfy at least one subsection of Rule 23(b).

Rule 23(b)(1) provides for a non-opt-out class action where individual actions could "'establish incompatible standards of conduct for the party opposing the class'" or "[ ] 'would be dispositive of the interests of the other members not parties to the individual adjudications.'" *Spano v. Boeing Co.*, 294 F.R.D. 114, 119 (S.D. Ill. 2013) (quoting Fed. R. Civ. P. 23(b)(1)). Rule 23(b)(3) applies if the court finds "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The party seeking class certification bears the burden of proof in establishing each of the requirements under Rule 23. *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90 (7th Cir. 1977). The failure to satisfy any one of these elements precludes certification. *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.2d 584, 596 (7th Cir. 1993). In deciding whether to certify a class, the court is not required to accept the allegations in the complaint as true. The court should make any factual and legal inquiries needed to ensure that the requirements for class certification are satisfied, even if the underlying considerations overlap with the merits of the case. *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001); *In re Bromine Antitrust Litigation*, 203 F.R.D. 403, 407 (S.D. Ind. 2001). In evaluating class certification, the court must take into consideration the substantive elements of plaintiff's cause of action, inquire into the proof necessary for the various elements, and envision the form that trial on the issues would take. *Cima v. WellPoint Health Networks, Inc.*, 250 F.R.D. 374, 377 (S.D. Ill. 2008).

Throughout this analysis, the court bears in mind that a principal purpose of class certification is to save the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical manner. *See Falcon*, 457

7

U.S. at 155. In doing so, Rule 23 gives the district courts "broad discretion to determine whether certification of a class-action lawsuit is appropriate." *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008) (internal quotations omitted). That said, "similarities of claims and situations must be demonstrated rather than assumed." *Szabo*, 249 F.3d at 677. "The propriety of class treatment thus will turn on the circumstances of each case." *Spano v. The Boeing Co.*, 33 F.3d 574, 582 (7th Cir. 2011).

### III. DISCUSSION

As stated earlier, Plaintiffs move to certify the following class:

> All those who received a notice of parking violation in the City of Noblesville between August 17, 1989 and May 23, 2018 and, as a result of their receipt of said notice, paid any monetary fines (the fine for an alleged parking violation, late fees, wheel boot fees, towing fees, and/or storage costs) and/or were deprived of the use of their vehicle due to the application of a wheel boot or seizure by towing.

([Filing No. 54](#).) They argue this class satisfies the requirements of Rule 23. Defendants respond that the proposed class is not ascertainable because an individualized inquiry must be made to determine whether each class member has standing. ([Filing No. 66 at 12](#).) The Court will first address that preliminary argument and then address each Rule 23 requirement for certification.

### A. Standing

"A class must not be defined so broadly that it includes persons who have not suffered injury, for 'the description must not be so broad as to include individuals who are without standing to maintain the action on their own behalf.'" *Does v. City of Indianapolis*, No. 1:06-cv-865-RLY-WTL, 2006 WL 3365672 at *2 (S.D. Ind. Nov. 20, 2006) (citing *Oshana v. Coca-Cola*, 225 F.R.D. 575, 580 (N.D. Ill. 2005)). Citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2019), Defendants argue that an allegation of "a bare procedural violation" does not confer Article III standing on a plaintiff. By this logic, Defendants argue the class cannot be ascertained because it is limited to

8

those who would have had a factual basis to challenge their parking ticket. (Filing No. 66 at 18.) To determine standing would require an individualized inquiry into each putative class member, Defendants argue, and thus a class action is not practicable.

Defendants' argument, as the Seventh Circuit has noted, puts "the cart before the horse" in a way that would "vitiate the economies of the class action procedure." *Kohen v. Pac. Inv. Management Co. LLC*, 571 F.3d 672, 676 (7th Cir. 2009). The effect of inquiring at this stage which class members have standing would allow the trial to precede the certification. *Id.* As long as one member of a certified class has a plausible claim to have suffered damages, the requirement of standing is satisfied. *United States Parole Commission v. Geraghty*, 445 U.S. 388, 404 (1980); *Wiesmueller v. Kosobucki*, 513 F.3d 784, 785-86 (7th Cir. 2008). Even if the named plaintiff lacks standing, he might still be able to continue as class representative until a more suitable member of the class was found to replace him. *Id.* at 786.

Here, it is clear that at least one named plaintiff has standing. All three Plaintiffs received parking tickets from Noblesville, some of which are attached to their complaint. All three Plaintiffs testified in their depositions that they would have disputed some of their parking tickets if given the opportunity. And, despite Noblesville offering no formal means to dispute those tickets, Plaintiffs Dollard and Duepner actually did attempt to dispute them to city officials. (Filing No. 67-1 at 6; Filing No. 67-3 at 12.) Defendants argue that Dollard does not have standing because he was not the registered owner of the car that was ticketed and because he did not pay the ticket he would have challenged. (Filing No. 66 at 17.) They also argue that Duepner and Webster lack standing because they did not have factual reasons to dispute their tickets, only procedural reasons. *Id.* at 18. This assertion is contradicted by the deposition testimony of both Duepner and Webster, who said that they would have challenged some of their tickets, were there

9

a means to do so, and Duepner's assertion at his deposition that he did go complain about tickets on two occasions to the Noblesville Police Department. (Filing No. 67-3 at 12.)

Plaintiff's proposed class is ascertainable because it is not vague nor is it based on subjective criteria. It identifies a group of individuals (those who received a notice of parking violation) harmed in a certain way (paid fines or were deprived the use of their vehicle) during a specific period (August 17, 1989 through May 23, 2018) in a particular area (Noblesville). Even under the strictest interpretation of *Spokeo*, Duepner and Webster have standing to challenge the constitutionality of the NTC because they would have attempted or did attempt to challenge parking tickets. The Court rejects Defendants' argument that it should not certify the class because the class is not ascertainable or the putative class members lack standing.

**B.     Numerosity**

Rule 23(a)(1) provides that the class must be so "numerous that joinder of all the members is impracticable." Fed. R. Civ. P. 23(a)(1). "Generally, where the membership of the proposed class is at least 40, joinder is impracticable and the numerosity requirement is met." *Gentry v. Floyd Cty.*, 313 F.R.D. 72, 77 (S.D. Ind. 2016), *on reconsideration in part*, No. 4:14-CV-00054-RLY-TAB, 2016 WL 4088748 (S.D. Ind. July 25, 2016) (citation omitted). Defendants argue the exact number of members in the putative class is unknown, but the limited material they have received in discovery indicates the number of people who received a notice of parking violation between January 1, 2016 and May 23, 2018 is at least 955. (Filing No. 55-5.) Given that the proposed class goes back to 1989, the real number of class members would likely be greater than that by hundreds or thousands of people. Defendants do not challenge numerosity as to the class of individuals that have received parking tickets alone. In other words, Defendants only challenge numerosity as to the class of individuals who have had a boot placed on their car. Because

10

Plaintiffs' Motion fails on a different prong of Rule 23, the Court need not address Defendants' argument about the putative class members who had a boot placed on their car.

C. **Commonality**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[A] common nucleus of operative fact is usually enough to satisfy the commonality requirement." *Spano*, 294 F.R.D. at 120 (S.D. Ill. 2013). "A common nucleus of operative facts exists where 'defendants have engaged in standardized conduct towards members of the proposed class.'" *Gentry*, 313 F.R.D. at 77-78 (S.D. Ind. 2016) (quoting *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)). Courts in the Seventh Circuit have found claims based on the constitutionality of a parking ordinance or the standardized conduct of a city enforcing that ordinance to satisfy the commonality requirement of Rule 23(a)(2). *See Van Harken v. City of Chi.*, 906 F.Supp. 1182, 1186 (N.D. Ill. 1995), *affirmed as modified by Van Harken v. City of Chi.*, 103 F.3d 1346 (7th Cir. 1997); *Robledo v. City of Chi.*, 444 F.Supp.2d 895, 907 (N.D. Ill. 2006).

Plaintiffs argue that commonality is satisfied here because "each class member's claim arises from the uniform application of the NTC" and "each and every class member shares the very same legal claims." (Filing No. 55 at 12.) Defendants respond that a broad allegation that all class members have suffered a violation of due process rights is insufficient to satisfy the rule's commonality requirement. (Filing No. 66 at 25-26.) Additionally, Defendants argue that there is no commonality amongst damages. *Id.* at 26. Some class members may not have damages because they could not have successfully challenged their parking violation, while other class members may have incurred late fees for not paying their fine, and those fees would be included in any damages claim they have. *Id.*

Defendants' argument misapplies Rule 23's commonality requirement. The requirement is that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The critical point, as the Seventh Circuit has said, is "the need for *conduct* common to the members of the class." *In re IKO Roofing Shingle Products Liability Litigation*, 757 F.3d 599, 602 (7th Cir. 2014). Commonality of damages is not an element of Rule 23(a)(2) and treating it as such would render "class actions about consumer products … impossible." *Id.* Different damages are only relevant to a Rule 23(a)(2) inquiry if they stem from different underlying conduct. *Id.* Here, the underlying conduct is the same for every member of the putative class. Plaintiffs allege that every class member was given a notice of parking violation they had no opportunity to challenge or that a boot was attached to their car and they were unable to challenge the fees associated with that. The question of whether Noblesville's ordinance afforded citizens of Noblesville their constitutional right to due process is common to all members of the putative class. Thus, Rule 23(a)(2)'s commonality requirement is met in this case.

**D.** **Typicality**

Typicality is closely related to commonality. *Spano*, 294 F.R.D. at 120. "The typicality requirement is 'meant to ensure the named representative's claims have the same essential characteristics as the claims of the class at large.'" *Id.* (quoting *Oshana*, 472 F.3d at 514). A claim is typical if it arises from the same event, practice or course of conduct that gives rise to the claims of other class members and the class representatives' claims are based on the same legal theory and are subject to the same defenses. *Oshana* at 514.

Defendants argue that the class representatives are not typical of the class. (Filing No. 66 at 30.) They point out that Dollard was not the registered owner of the vehicle he parked when he received his parking ticket, and that he never paid that ticket. *Id.* They argue that Webster is the

only named plaintiff who could represent the class members who have had a boot attached to their vehicle, and that none of the named plaintiffs had his vehicle towed. *Id.* And Defendants reiterate their argument, which the Court has rejected, that Duepner did not have a factual basis to dispute any of the tickets he received. *Id.*

Each of these arguments ignore the standard for typicality under Rule 23, which aims to ensure the class representative's claims have the same "essential characteristics" of the class. *Spano*, 294 F.R.D. at 120 (internal quotation omitted). The essential characteristics of Plaintiffs' claims are a negative action taken by Noblesville or city officials under the NTC, an inability to challenge that action, and damages. The named Plaintiffs are typical of the putative class because their claims arise from the same conduct or practice of the Defendants and those claims are based on the same legal theory and subject to the same defenses. Plaintiffs satisfy Rule 23(a)'s typicality requirement.

**E.     Adequacy**

The last requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[T]here is a constitutional dimension to this part of the inquiry: absentee members of a class will not be bound by the final result if they were represented by someone who had a conflict of interest with them or who was otherwise inadequate." *Spano*, 633 F.2d at 586-87. The adequacy standard has two elements: (1) the plaintiffs must be qualified, experienced, and able to conduct the proposed litigation, and (2) the plaintiffs must not have interests conflicting with those of the putative class. *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90 (7th Cir. 1977).

Defendants challenge various Plaintiffs' adequacy to serve as class representative on four grounds. First, they argue that "Webster previously represented the three named Plaintiffs in this

matter and may have a conflicting interest in securing a fee award for his firm's previous work on this case." (Filing No. 66 at 32.) Second, the large number of tickets received and paid by the named Plaintiffs give them different incentives than the average class member, who likely received a handful of tickets at most. *Id.* Third, Dollard testified at his deposition that he did not know what his duties as a class representative were and that he had thrown away a ticket he claims in this case. (Filing No. 67-1 at 30.) And last, Defendants argue that they have "a unique defense to all three Plaintiffs in this case in that they have failed to timely assert their rights after becoming aware of the facts giving rise to their cause of action in 2013." (Filing No. 66 at 33.)

Of these four issues Defendants raise, the Court is primarily concerned with the first, although it is scarcely mentioned in the briefing. Defendants suggest that Webster, as former counsel in this case, has interests conflicting with those of the class because of his incentive to win a high fee for class counsel. They cite no cases in support of this contention. Plaintiffs offer a response which, likewise, comes with no citations to caselaw:

> Nor does Mr. Webster's prior service as counsel of record create a conflict with the putative class. The Court, as opposed to the representative Plaintiffs will ultimately determine what, if any, attorneys' fees are awarded in this matter and to whom. Mr. Webster's prior representation of the named Plaintiffs is therefore irrelevant to a determination of whether he is appropriate representative of the class.

(Filing No. 73 at 15-16.) After reviewing caselaw, the Court disagrees with Plaintiffs' response and finds Webster's prior involvement as counsel in this case highly relevant to his adequacy as a class representative.

The Seventh Circuit has said that "[i]f the interests of a class are to be fairly and adequately protected, if the courts and the public are to be free of manufactured litigation, and if proceedings are to be without cloud, the roles of class representative and class attorney cannot be played by the same person." *Susman v. Lincoln American Corp.*, 561 F.2d 86, 94-95. In *Susman,* the Court of

Appeals explicitly rejected the argument that Plaintiffs make here—that the Court's supervision of any award and corresponding attorney fee obviate the need to enforce Rule 23(a)(4). *Id.* at 95 ("We do not accept under the circumstances of this case plaintiffs' argument that reliance on the court's control of settlement and attorney's fees renders strict enforcement of the requirements of Rule 23(a)(4) unnecessary.") *Susman* establishes that it is generally improper for an attorney to act both as class counsel and class representative.

Distinguishing Webster's situation from *Susman* is the fact that he does not seek to act as class counsel going forward. Webster and his firm, Webster Legal, LLC[4], were Plaintiffs' counsel when this case was removed to this Court on April 13, 2018. ([Filing No. 1](#).) He and his associates worked on this case for nearly a year, but on March 5, 2019, approximately two weeks before Plaintiffs filed this Motion to Certify Class, Webster and his associates moved to substitute attorney ([Filing No. 47](#)), which the Court granted ([Filing No. 50](#)). Neither Webster nor anyone from his law firm appears on this case, but they did nearly a year's worth of work on the case.[5]

Despite that fact, the Court finds that Webster cannot adequately represent the members of the putative class because his interest in the attorneys' fees conflicts with the interest a representative must have in the ultimate class award. Plaintiffs' reply brief does not contest that Webster stands to receive a share of whatever attorneys' fees may be awarded in this case. ([Filing No. 73 at 15-16](#).) Because Webster's interest in obtaining a high attorneys' fee may be antagonistic to the class, he is disqualified as a class representative.

---

[4] In other filings the firm is known as Webster and Garino, LLC. The Court assumes the firm changed its name at some point. For sake of clarity, the Court will refer to Webster's law practice as "Webster Legal, LLC."

[5] Plaintiffs' counsel is currently Stephen M. Wagner and Timothy L. Karns of Wagner Reese, LLP. ([Filing No. 45](#); [Filing No. 46](#).) Defendants do not challenge the adequacy of those attorneys.

The Court's inquiry on this issue does not end there; questions remain as to whether Duepner and Dollard are adequate representatives of the class. The Seventh Circuit has said plainly that it is improper for class counsel to serve as a class representative, but it has gone beyond that, declaring that consensus among lower courts is that neither "class attorneys, their relatives, or business associates" should act as class representative. *Susman* at 95. That is because even if the plaintiff does not expect to share in the attorneys' fees, "there exists a possibility that one so situated will become more interested in maximizing 'return' to his counsel than in aggressively presenting the proposed class action." *Id.* (quoting the District Court). That sentiment has led courts in the Seventh Circuit to find the following relationships improper under Rule 23(a)(4): (1) one named plaintiff was class counsel's father-in-law, *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014); (2) two named plaintiffs were personal stockbrokers of class counsel, *In re Discovery Zone Securities Litigation*, 169 F.R.D. 104, 109 (N.D. Ill. 1996); (3) a named plaintiff was co-counsel with the class counsel law firm on twenty-five pending cases, *Jaroslawicz v. Safety Kleen Corp.*, 151 F.R.D. 324 (N.D. Ill. 1993); and (4) one named plaintiff was class counsel's brother and another was a member of class counsel's law firm, *Mowry v. JP Morgan Chase Bank*, 2007 WL 1772142 (N.D. Ill. June 19, 2007). The Court recognizes that other cases have examined close relationships between class counsel and class representatives and found that they did not violate Rule 23(a)(4). *In re Southwest Airlines Voucher Litigation*, 799 F.3d 701 (7th Cir. 2015); *CE Design v. Beaty Const., Inc.*, 2009 WL 192481 (N.D. Ill. January 26, 2009). However, in *CE Design*, the Seventh Circuit said that class counsel, who was co-counsel with the named plaintiff in an unrelated matter, had a potential conflict that should have been disclosed. 799 F.3d at 715-16. The Court upheld the adequacy of the class based on a different representative plaintiff. Because of the undisclosed conflict of interest, the Court stripped the conflicted class

representative of his $15,000.00 incentive award and reduced class counsel's fee by the same amount.

Webster, Duepner, and Dollard are all Noblesville attorneys who at one point—circa 2013, perhaps—had offices in the same building. ([Filing No. 67-1 at 35](#).) The Seventh Circuit has affirmed a district court that found adequacy lacking where class counsel rented office space from the named plaintiffs—a law firm—and shared that office space. *Susman*, 561 F.2d at 95. "The fact that an individual rents office space from a law firm does not by itself render a member of that firm or a relative of a member of that firm an inadequate class representative." *Id.* Accordingly, the Seventh Circuit instructs lower courts to evaluate such circumstances on a case-by-case basis.

Here, there is scant evidence in the record that would illuminate Duepner's and Dollard's relationship to Webster. The three men merely shared an office building approximately seven years ago. As far as the Court knows, neither Duepner nor Dollard have ever acted as co-counsel with Webster in a different matter. The Court does not have enough information to form an opinion on whether Duepner or Dollard have an interest in the fees class counsel—including Webster—will ultimately receive in this case.

Still, the dearth of evidence weighs against Plaintiffs, who bear the burden of proof in establishing each of the requirements under Rule 23. *Id.* at 90. The failure to satisfy any one of these elements precludes certification. *Retired Chi. Police Ass'n*, 7 F.2d at 596. Moreover, the Seventh Circuit has said that adequacy can be defeated by "even an appearance of improper conflict of interest." *Susman* at 91. Irrespective of Duepner's and Dollard's actual interest in the attorneys' fees in this case, the longstanding relationship of Duepner, Dollard, and Webster gives this case "the appearance of manufactured litigation." *Jaroslawicz*, 151 F.R.D. at 330 (omitting quotations). Because Duepner's and Dollard's posture as class representatives creates an

impression of impropriety, and because Plaintiffs have failed to meet their burden of showing they are adequate class representatives under Rule 23(a)(4), Duepner and Dollard are disqualified as class representatives.

Having determined that none of the named Plaintiffs satisfy Rule 23(a)(4)'s adequacy requirement, the Court must **deny** Plaintiffs' Motion for Class Certification.

As the issue of adequacy is dispositive, the Court need not address the issue of predominance or any statute of limitations concerns raised by Defendants.

### IV.   CONCLUSION

Because Plaintiffs did not meet their burden of showing they are adequate class representatives under Rule 23(a)(4), the Court **DENIES** Plaintiffs' Motion for Class Certification.

**SO ORDERED.**

Date:  __2/12/2020_____

*[signature: Tanya Walton Pratt]*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Timothy Loren Karns
WAGNER REESE LLP
tkarns@wagnerreese.com

Stephen M. Wagner
WAGNER REESE LLP
swagner@wagnerreese.com

Adam Spencer Ira
KIGHTLINGER & GRAY - Evansville
aira@k-glaw.com

Robert M. Kelso
KIGHTLINGER & GRAY, LLP (Indianapolis)
rkelso@k-glaw.com